Martin J.
Action for work and labour done, on a quantum meruit. The answer alleges, that the parties are brothers; that their father died in 1810, without leaving any estate; that the plaintiff being then very young, the defendant took him home, furnishing him with food, raiment and schooling; that in 1813 or *401 1814, their grandfather gave the plaintiff a very young negro boy, who came to the defendant’s, and the plaintiff and said boy remained there till the 20th of April last ; that it is true, they both, at times, worked for the defendant, but the value of their services did not amount to the expences he incurred in their maintenance.
West'n District.
The plaintiff had a verdict, and judgment, for and the defendant appealed.
Jet deposed, he has seen the plaintiff on defendant's plantation always industriously employed, as much as he has ever seen any boy; ploughing, driving oxen, and he thinks, picking cotton. Since 1815, the plaintiff was employed, every day, at work, when the witness, saw him. He staid one night at the defendant's, and saw the plaintiff up at daylight. He told the defendant he ought to pay plaintiff $20 per month. He believes the plaintiff could have earned from $12 to $15 per month, any where; and he saw him passing and repassing often in great haste. The plaintiff left the defendant last spring. He may be about seventeen or eighteen years of age. The defendant said, he had sent him to school but for a little time. He was com *402 fortably clad. He thinks his services always worth his victuals and clothes. During the war, negroes earned only their victuals, its clothes and taxes.
A. Smith, a brother of the parties, deposed, their father died on the 16th of March, 1811. In the end of the year, the plaintiff was sent to their grandfather, but was detained from him. Their grandfather died, leaving him some horses and a negro boy. In the latter end of 1812, the defendant directed the plaintiff to go to his house with his boy and horses. They staid there till April 25, 1820, and worked under the direction of the witness, who was employed by the defendant, who employed besides, a brother-in-law of theirs, and occasionally a negro. This was in 1813, 14, and 15, the crops only answering for a support. The crop made by the witness, plaintiff, his boy, and a hireling, sold for $400 in 1814. They were treated like negroes. They rose early and worked late. In 1816, plaintiff was always employed in ploughing, hoeing, and picking cotton. He was not indulged when he lost time ; he was told of it. He was obedient, and made a crop. He was born in 1800. He was unhealthy, as well as *403 his negro boy. No doctor was ever called for him. He was a drudge, and went to the mill and on errands. In 1818, he agreed to work, and worked till March, when he left the plantation, but returned in the fall and helped to gather the crop. The negro was sick. They performed well in 1819. The witness took the negro to make an engagement with Miller, and settled with the defendant for the hire of the boy; but is certain he did not earn much. He has been hired this year for $10 a month. He is also twenty years of age. He has been kept at hoe and picking cotton, though able to plough these two years. Three years ago the defendant promised to do something for the plaintiff, but has failed. The witness is twenty-six years of age. He remonstrated with the defendant, because he did not educate the plaintiff. The defendant supported the plaintiff in 1813. There was no more than a support made in 1814, and the defendant got only $10. The witness had only $40 for his share in 1815. The crop made by the witness, the plaintiff, a negro, and sometimes a hireling, sold only for $400. In 1816 there were two negroes more; two negro men, a *404 negro girl, the plaintiff, and a negro woman, at the house, and the crop sold for about §650. In 1817, there was a white man employed, and the crop sold for §1100. In 1818, thirty-two or thirty-three bales were made; but a negro woman and a girl were added to the hands. The plaintiff is small, and the witness thinks he would have been able to plough two years ago. He was a few weeks at school in 1813, and was taken from it to work on the crop, and was sent another time. He was not treated cruelly. He was not clothed as other boys are ; the negro was mostly naked. The crops were small, because land was cleared.
Madan deposed, plaintiff lived with him about seven months. He is well disposed, and appears to be between seventeen and eighteen. The negro boy is nearly the same age, small and steady; he gives §10 a month for him, and would be glad to keep him a year.
Jones deposed, the plaintiff lived with the defendant, worked in the field, is laborious and steady; hardy and strong, though small of his age. Though twenty years of age, is no larger than a boy of fifteen or sixteen.
*405 P. Smith, a relation to the parties, deposed, that in 1811, or early in 1812, the plaintiff lived with the defendant, and was then eight or ten years old, destitute of a home, and unable to procure a support. About that time his grandfather died, and left him a negro boy, eight years old. The boy was sickly, and the witness thinks he would not have supported the plaintiff and his boy for their labour, unless on motives of benevolence. The defendant did a fair part towards his brother, and was incapable of taking any advantage of him.
Hawes deposed, the plaintiff ought to have earned something more than his victuals and clothes. He was small but smart and industrious.
Myers deposed, he lived with the defendant in 1818; the plaintiff was not considered as a hand; he only went on errands. The witness lived two years and a half, and had a share in the crop. So he had in 1819. The plaintiff worked on the crop.
A man, who on the death of his father, takes home his brother, a boy of nine or ten years of age, destitute of property and a home, and keeps him on his farm, employing him there *406 on, is not necessarily bound to allow him wages, although he keep him steadily engaged from sun rise till dark. As long as the lad is unable to act or judge for himself, it is fortunate that he fell into the hands of somebody who raised him in the habits of sobriety and industry; and such a person, in my judgment, is not bound to make him any compensation. When the lad is able to act or judge for himself, he ought to make a bargain with his employer, or seek labour elsewhere. But the agreement need not be express, it may be inferred from circumstances, and of these there can be no better judge than a jury of the neighbourhood; and they require no other direction from the court, than that the employer ought to allow to the person who has laboured for him, what he might reasonably be believed to expect, taking all circumstances into consideration.— In the present case, a jury has allowed $ the defendant has not deemed it worth his while to apply for a new trial, on account of the excessiveness of the sum. I am not ready to say whether it is that which I would have voted for, had I had the honor of being associated with such of my fellow-citizens as gave *407 the verdict; but I cannot say they erred. They had means of information not within my reach, and if I do not give an unqualified approbation to the verdict, it is because I wish not to have it believed, that any member of this court, considers a man, who harbours and employs, and who keeps steadily at work, a houseless and pennyless relation or stranger, is, in every case, bound to pay him wages.
Wilson for the plaintiff. Thomas for the defendant.
Independently of this circumstance, the plaintiff had a negro boy (who worked with him for the defendant) and whose services, though not very valuable, entitled him likely to some compensation.
We ought to affirm the judgment of the district court.