Brown v. Wade.

due them and has ordered it paid, or after the guardian has been ordered to account and has failed to do so.

AFFIRMED.

Brown v. Wade.

42 647
103 392

42 476
112 588
112 636

42 647
113 160

42 647
124 320

1. **Statute of Frauds:** WHAT CONSTITUTES DELIVERY. Where, in a sale of land, the vendee pointed out certain cattle of his which were running with others in a pasture and designated their price, which the vendor agreed to take as they were and at the stipulated price, it was *held* that this constituted a delivery of the cattle and took the sale out of the statute of frauds.

2. ———: PART PAYMENT: DEBT. Whether an agreement that a debt of the vendee to the vendor should be applied upon the purchase price would satisfy the requirements of the statute, *quære*.

3. **Judicial Sale:** NOTICE OF PRIOR CONVEYANCE: BONA FIDE PURCHASER. Where the record showed that a conveyance of land was made subsequent to the filing of a transcript of judgment against the vendor, the purchaser at judicial sale under execution issued upon such judgment must have received something more than a mere general notice that, in fact, the conveyance was made before the filing of the transcript, to affect the *bona fides* of his purchase.

*Appeal from Wayne District Court.*

WEDNESDAY, APRIL 5.

THIS is an action for the possession of a certain forty acres of land, of which plaintiff alleges he is the owner. The answer denies that plaintiff owns the land, and alleges that defendant is the owner thereof. The leading facts, chronologically stated, are as follows: Some time in the first week of October, 1872, French E. Brown, the father of plaintiff, made a parol contract of purchase from J. T. Davis of the west half of the northwest quarter of section twelve, township sixty-nine, range twenty, in Wayne county, the price agreed upon being $800. The north half of this eighty was purchased for the plaintiff.

On the 25th day of October, 1872, a judgment by confes-

sion was rendered in the Appanoose District Court, in favor of the First National Bank of Centerville, against John T. Davis, Theodore Wade and L. Davis, for $4,304.08. The defendant, Theodore Wade, was a surety on the debt on which this judgment was recovered. On the 29th day of October, 1872, a transcript of this judgment was filed in the office of the clerk of the District Court of Wayne county.

On the 6th day of December, 1872, J. T. Davis deeded the land in controversy to H. M. Brown, the plaintiff.

On the 29th day of August, 1873, the land in controversy was sold at sheriff's sale to the defendant, under the judgment above named. The cause was tried by a jury, and, under the instructions, a verdict was returned for the plaintiff, upon which judgment was entered. The defendant appeals. The only questions presented arise upon the instructions. The further material facts appear in connection with the various questions discussed.

*Tannehill & Fee*, for appellant.

That the vendee owed the vendor a sum which it was agreed should be applied as part of the purchase price would not constitute a part payment, within the meaning of the statute of frauds. (Story on Sales, 4 ed., § 273a; *Brabin v. Hyde,* 32 N. Y., 522–3.) Where a memorandum or writing is dispensed with, the statute of frauds is not satisfied with anything but the unequivocal *acts* of the parties; mere words will not suffice. (*Shindler v. Houston*, 1 N. Y., 261; *Archer v. Zeh*, 5 Hill, 205; Story on Sales, 4 ed., § 276.) Upon the question of notice, see 2 Sugden on Vendors, 4 ed., p. 755; *Wilson v. Miller & Beeson*, 16 Iowa, 111. An equitable title may, under the Revision, prevail over a legal title, but it must be pleaded as an equitable defense and the issue tried as an equitable issue, by the first or second method of trying equitable issues. (*Kramer v. Conger*, 16 Iowa, 434.)

*Tedford & Miles*, for appellee.

Questions of fact will not be reviewed unless all the evidence is set out in the abstract. If it be agreed, in the sale of goods.

that an indebtedness of the purchaser to the seller shall be deducted from the price, this may be equivalent to a payment, and satisfy the statute. (Chitty on Contracts, 4 ed., 348.) The intent of the parties has much to do in determining the question of delivery. (*Shindler v. Houston*, 1 N. Y., 265.) If the seller does what is usual or the nature of the case makes convenient and proper to pass the effectual control of the goods from himself to the buyer, this constitutes delivery. (3 Pars. on Con., 6 ed., p. 43.) If the purchaser has knowledge of any fact sufficient to put him upon inquiry, he is presumed to have made the inquiry or to have been negligent in not doing so. (*Williamson v. Brown*, 15 N. Y., 354; Kerr on Fraud and Mistake, pp. 236–7; 2 Sugden on Vendors, 335.)

DAY, J.—I. The abstract purports to set forth the testimony, so far as it relates to the questions raised upon the instructions. The contract of purchase was made in the first week of October, 1872. The price agreed upon was ten dollars per acre, part of which was to be paid in cattle and a crib of corn, and the balance in money. The evidence tends to show that, in August preceding the purchase, French E. Brown, the purchaser, had loaned Davis $20, and that it was agreed this should go upon the land in part payment. At the time of the sale it was agreed that Davis should have upon the purchase price nine head of cattle, making, in connection with the $20 loaned, the sum of $190, or $197. The evidence is quite clear, and without conflict, that at least five head of these cattle were, at the time of the transaction, pointed out and selected upon the range, and the price agreed upon, and that two or three weeks afterward Davis drove them from the range.

Upon this branch of the case, the court instructed the jury as follows:

"4. You will first inquire as to the sale, and if you find that there was a verbal sale of the land by Davis to Brown, and that anything was paid by Brown to Davis upon the sale, then it was a valid sale. If you believe that Davis owed

Brown the $20 spoken of at the time of the sale, and it was agreed between the two men that the $20 should go on the sale, as part of the purchase money, then this is something paid, and would make it a valid sale.

"If cattle of Brown were running on the range or in pasture, and Brown and Davis agreed that the cattle or any of them designated and pointed out should be taken by Davis as part pay for the land, and Davis agreed to take them where they were, on the range or in the pasture, then that is a sufficient delivery of the cattle, and was a payment on the land."

Appellant assails both branches of this instruction. We will first consider the latter part of it. It seems to us there

1. STATUTE of frauds: what constitutes delivery.

can be no question that the facts stated in this branch of the instruction amount to a delivery and acceptance of the cattle. What constitutes a delivery depends largely upon the character and situation of the property. The delivery of the key of a warehouse, or making an entry in the books of a warehouse-keeper, or delivering with indorsement a bill of lading or a receipt, constitutes such delivery of personal property as will satisfy the statute of frauds; and even less than this may be a delivery and acceptance where the goods are bulky and difficult of access and removal. See 3 Parsons on Contracts, 5 ed., p. 34, and cases cited. On page 44 of the same work it is said: "We think that if the seller does in any case what is usual, or what the nature of the case makes convenient and proper, to pass the effectual control of the goods from himself to the buyer, this is always a delivery." This rule seems to us eminently just and practical. Nothing more should be required than what is usual, convenient and proper. See, also, Story on Sales, fourth edition, p. 282 and cases cited. The evidence shows that the cattle were running out on the range. All that was necessary to complete the sale was that the right of dominion over them should be transferred from Brown to Davis. To this end it could not be necessary that Davis should take them into his manual custody, and drive them off the range, or remove them to another part of it. The interest and the convenience of the purchaser required that the cattle should

Brown v. Wade.

remain where they were, and he had a right to leave them, there. It was only necessary that the cattle should be pointed out, that Brown should agree that Davis might have them in part pay for the land, and that Davis should agree to take them as such payment where they were and as they were, and then the delivery was complete. Davis might afterward, without any further act or consent of Brown, take the cattle into his manual custody, and if they had died, or been stolen before such manual custody was complete, there can be no doubt that Davis would have been obliged to bear the loss.

There is great doubt as to the first branch of the instruction, that a mere agreement that $20 which Davis owed Brown

2 ——: part should go on the sale as a part of the purchase
payment.
debt.    money, would constitute part payment and render the sale valid. See Story on Sales, 4th ed., section 273 a, and cases cited; *Brabin v. Hyde*, 32 N. Y., 519. But there is no conflict in the evidence as to the delivery of five of the cattle, under the second branch of the instruction. Whatever error, therefore, there may be in the first part of the instruction, is error without prejudice.

II. Evidence was introduced tending to show that Wade, before his purchase at the sheriff's sale, was notified by Davis

3. JUDICIAL    that the land in controversy had been sold to
sale: notice of  Brown. Upon this branch of the case the court
prior convey-
ance: bona     instructed the jury as follows: "9. If you find
fide pur-
chaser.        that the sale of the land was made by Davis to F.
E. Brown, and that it was made before the filing of the transcript, October 29, 1872, and that Wade had notice of such sale before he bought the land at sheriff's sale, August 29, 1873, then you will find for the plaintiff as to all the land except the three and a half acres, about which you are hereafter instructed."

The defendant asked the court to give the following instruction: "3. If you find that Davis sold the land in dispute to Brown before the filing of the transcript in this court, and find no possession of the land was given and no deed therefor recorded before the filing of the transcript, then to entitle the plaintiff to recover he must satisfy you by a preponderance of

evidence that the defendant, at the time he bought the land, had notice of the purchase by Brown before the filing of the transcript. Such notice must either have been full and complete, or such as would have put him on his guard and prompted him to make such inquiry as any reasonably prudent man would make."

The court gave this instruction, with the following modification: "This is given qualified as follows: It is not necessary that such notice should have been that the sale was made before the transcript was filed; it is sufficient if he had notice of the sale before the sheriff's sale, but the sale must have been made in fact before the filing of the transcript."

It is objected to the ninth instruction and to the modification of the third asked, that they leave the jury to infer that it was sufficient that Wade had notice of the sale, without reference to the time when it was made. Under ordinary circumstances this instruction and the modification would be proper, for if a person has notice that property which he intends to buy has been sold to another, if the time of the sale materially affects his rights, ordinary prudence would require him to make inquiry respecting the time. But in this case the evidence shows that the information that the land had been sold was communicated long after the transcript of judgment was filed and became a lien; that the deed from Davis to plaintiff was recorded January 13, 1873, and that defendant, before making his purchase at the sheriff's sale, procured an abstract of title. This abstract of title would show a conveyance from Davis to plaintiff December 6, 1872, whereas the transcript of judgment was filed in Wayne county, creating a lien upon the land, October 29, 1872. The records, therefore, would show a sale subject to the judgment under which defendant proposed to buy, and having nothing but a general notice that Davis had sold to Brown, he would, upon seeing the record of the deed, be justified in referring the sale to that date, and would not be required to institute an inquiry for the purpose of ascertaining whether or not the contract of sale had in fact been made of a date prior to the filing of the transcript. Upon this subject see *Rogers v. Hussey*, 36 Iowa,

664. Under the facts of this case, in order to affect the defendant with notice of plaintiff's rights, something more than a mere general notice that Davis had sold was necessary. The record showed such a sale, but at such a time as to be subject to the lien of the judgment. To affect the *bona fides* of the purchaser at the sheriff's sale, there should have been something to stimulate upon his part an inquiry whether or not the sale had been made before the time indicated by the record of the deed. In view of this testimony this ninth instruction and the modification of the third are vulnerable to the objection urged, and they were calculated to mislead the jury to the prejudice of the defendant. On this ground the judgment must be

REVERSED.