## M. GENSBURG v. MARSHALL FIELD & COMPANY, Appellant.

:104  599|
123  506|.

104  599|
137  137|

**Conversion:** DAMAGES.  The measure of damages in an action for property converted is, in the absence of special circumstances
1  requiring a different rule, their fair market value at the time and place of conversion, with interest, and not their cost at a distant locality, with or without transportation charges added.

SAME.  If it appears that personal property converted has no market
1  value at the place of conversion, the actual value may be shown.

EVIDENCE OF PARTNERSHIP.  The firm of B. & G. was in business at N., and, several months before its failure, bought merchandise

and shipped considerable quantities thereof to plaintiff, at several different places where they were sold at less than cost. A part of the goods were shipped to other addresses, although all were received by him. At one place he sold under an assumed name, and was assisted by a member of the firm. A portion of the money derived from such sales was used in purchasing the goods in controversy. The firm had a store at D. in which plaintiff took a great interest. When asked the reason of the sales, he said that trade was dull, and they were closing out their stock at M., and, when applying for a license with B , a member of the firm, to sell at auction, stated that he was in partnership with B. in selling out the goods. *Held*, that an inference of a partnership relation between plaintiff and B. and G. might be drawn from such circumstances, and the question should properly have been submitted to the jury.

OF MALICE. In an action for wrongful seizure of goods under an execution against another firm, testimony by plaintiff that, at the time he brought part of the goods from defendant, he told its credit man that he was starting business at N., was admissible as tending to show defendant's knowledge that the purchase was made for the plaintiff, rather than the firm of B. & G , and was material as bearing on the question of malice in making the levy.

**Pleading: MALICE.** An allegation in a petition in an action for the conversion of property levied upon, which avers that the acts of the sheriff and defendant "were done for the purpose of oppressing plaintiff, and compelling him to surrender his property without receiving compensation therefor," sufficiently charges "malice," although the word is not expressly used.

*Appeal from Dubuque District Court.* — HON. J. L. HUSTED, Judge.

### TUESDAY, FEBRUARY 1, 1898.

THE defendant obtained judgment against A. Goldberg and Blumenthal & Goldberg, and, on November 13, 1894, caused execution to be issued thereon; later levied on the goods in controversy. Though duly served with notice of plaintiff's ownership, the sheriff sold the goods, and this action is brought for damages resulting from their conversion. Trial to jury. Judgment for plaintiffs, and defendant appeals.— *Reversed.*

*Powers, Lacey & Brown* for appellant.

*Henderson, Hurd & Kiesel* and *Longueville & McCarthy* for appellee.

LADD, J.—In actions for the conversion of personal property, where no special circumstances require a different rule, the measure of damages is the fair market value of the property at the place and time of conversion, with interest. *Brown v. Allen*, 35 Iowa, 306; *Gravel v. Clough*, 81 Iowa, 274; *Thew v. Miller*, 73 Iowa, 742; 5 Am. & Eng. Enc. Law, 40; *Ripley v. Davis*, 90 Am. Dec. 262, and note. If it appears that the property has no market value at that place, then the actual value may be allowed instead. *Gere v. Insurance Co.*, 67 Iowa, 275; *Clements v. Railway Co.*, 74 Iowa, 442. In the last case such value was adjudged established by proof of the price for which goods were sold; and it has been held that, where there is no home market for goods, the measure of value is the foreign market price, less transportation charges. *U. P. Railway Co. v. Williams*, 3 Colo. App. 526 (34 Pac. Rep. 731). No special circumstances, however, take this case out of the general rule. The only question is whether proof of the cost of the goods, alleged to have been converted, in Dubuque and Chicago, and of freight, without more, furnishes a proper basis for the estimate of value at New Hampton, the place of conversion. Some authorities hold that evidence of the price paid for merchandise, shortly before or after, and when in substantially the same condition, without purpose of fixing a criterion, is competent as tending to show the market value. *Hoffman v. Conner*, 76 N. Y. 121; *Hangen v. Hachemeister*, 114 N. Y. 566 (21 N. E. Rep. 1046); *Parmenter v. Fitzpatrick*, 135 N. Y. 190 (31 N. E. Rep. 1032); *Crampton v. Marble Co.*, 60 Vt.

291 (15 Atl. Rep. 153). Whether such evidence of price at or in the vicinity of the place of conversion is admissible for such purpose has not been determined by this court; but, if it be conceded that it is, it would not follow that such cost in a locality several hundred miles distant, and beyond the state, would alone establish the market value. At the most, the cost of the goods in controversy would only have a tendency to show the market value at the places where purchased, and would not indicate in any way what the market might be at New Hampton. Indeed, it often occurs that goods are readily saleable in one locality which cannot be disposed of at another. There may be a demand for many articles in a large city for which the people in the smaller places have no use, and *vice versa.* The district court instructed the jury that the market value at New Hampton was the cost of the goods in Chicago and Dubuque, with freight added. Why not with freight subtracted? No market for the goods at New Hampton being shown, as well conclude the value thereof would be that in Chicago and Dubuque, less transportation for their return. There was no evidence that the goods were staple articles, such as are in use everywhere, nor that there was or was not any market at New Hampton, nor that values at the latter place were in any way controlled by the markets of Dubuque and Chicago. As well say the cost price of any other distant city, with transportation charges. The measure of damages cannot be left to mere conjecture. There is no basis for the claim that value would be the cost in Chicago, with transportation charges added, or with them subtracted. Recovery cannot be had for the value of goods at one place on proof of what they are worth at another. Many circumstances which need not here be enumerated render such a criterion utterly fallacious. No excuse appears of record for not establishing the market value at New Hampton. If such

value were the cost of the goods, with freight added, this could have been readily shown; but the mere cost at a distant locality, with or without transportation charges, does not furnish a proper basis for estimating the market value at the place of conversion.

II.    The court held the evidence insufficient to warrant a finding that plaintiff was a member of the firm of Blumenthal & Goldberg. That issue ought to have been submitted to the jury.   The evidence, without giving it in detail, tended to show that said firm was in business at New Hampton, and, during several months before its failure, had bought large quantities of merchandise from many different wholesale houses, and re-shipped considerable quantities thereof from New Hampton to the plaintiff, at Goldfield, Dows, Thrall, and other places, where he had sold for less than cost; that a portion of the goods was shipped to other addresses, though all were received by the plaintiff; that he made the sales at Goldfield, under an assumed name, and was assisted there a part of the time by Goldberg, a member of the firm, and used a portion of the money derived therefrom in purchasing the goods in controversy; that at Dows the firm had a store, in which plaintiff took a great deal of interest, and at which he passed the most of his time when there; that, when asked the reason for the sales, he remarked that trade was dull, and they were closing their stock at New Hampton; and, when he and Blumenthal applied to the mayor for license to sell at auction, Blumenthall, in plaintiff's presence, said the goods belonged to the firm of Blumenthal & Goldberg, which they were selling there, and at other places; and thereupon the plaintiff stated that he was in partnership with Blumenthal in selling out said stock of goods.   The inference of a partnership relation is not inevitable, but might be drawn from such a state of facts if established by the evidence.   If he was in partnership, the nature of

the transactions in which the firm was engaged furnished a controlling motive for concealing it. The goods were purchased under circumstances indicating an intention never to make payment therefor. Large quantities were unpacked, put in other boxes, and immediately re-shipped to the plaintiff. He assumed charge of the sales, assisted at one time by Goldberg, and at another by Blumenthal. Goods recently purchased were sold at much below their cost. He certainly knew the nature of the transactions in which the firm was engaged, and he spoke of its business as though he had a direct interest therein. He admitted that he was a partner of one member of the firm in handling goods shown at that time to be the firm property. If the jury found the plaintiff a member of that firm, we think the finding would have such support in the evidence, as not to call for any interference by the court.

III.    Gensburg testified, when about to buy a part of the goods in controversy from the defendant, that he told the credit man of the firm he "was starting business at New Hampton, and wanted to look at some goods, and would pay cash for them." This was admissible as tending to show knowledge of defendant that the purchase was made for the plaintiff, rather than for the firm of Blumenthal & Goldberg, and was material as bearing on the question of malice in making the levy. The information was imparted to the employe of the defendant, acting within the scope of his employment; and, under such circumstances, knowledge of the agent is that of the principal. *Warburton v. Lauman*, 2 G. Greene, 420; *Jones v. Bamford*, 21 Iowa, 217; *Thompson v. Merrill*, 58 Iowa, 419; *Huff v. Farwell*, 67 Iowa, 298. The goods were still in the original packages at the railroad depot when levied on, so that defendant was advised of the identity with those purchased.

IV.   It is said malice is not alleged in the petition, nor established by the evidence.  The use of the word "malice" is not essential in charging it, but language defining or describing it, under the rules of 4    pleading, is quite enough.  Even if it be conceded that malice cannot be inferred as a conclusion from the defendant's knowledge of plaintiff's ownership of the property prior to the levy, the petition also alleges that the acts of the sheriff and defendant "were done for the purpose of oppressing plaintiff and compelling him to surrender his property, without receiving compensation therefor."  This is a very good description of that evil motive termed "malice."  Without reviewing the evidence in detail, it will be sufficient to say that this issue was properly left to the determination of the jury. The instructions announced the rules of law familiar in such cases.  The other error argued will not be likely to arise on another trial.—REVERSED.