J. W. Bowman, Appellee, v. J. L. Humphrey, Jr., Appellant.

**Nuisances: JUSTIFICATION: EVIDENCE.** Justification for the establish-
1  ment and maintenance of a nuisance by the pollution of a water course, cannot be established by evidence that the business in which defendant was engaged, was one of benefit and profit to the general public.

**Nuisances: DAMAGES.** Damages for a continuing nuisance may be
2  shown, subsequent to the filing of the original petition, where there is an amendment filed claiming damages to the time of trial.

**Nuisances: LIABILITY OF SEPARATE TORT FEASORS.** To hold one of two
3  parties responsible for the entire damage caused by the construction and maintenance of a nuisance, a concert of action must be made to appear.

*Appeal from Wayne District Court.*— Hon. H. M. Towner, Judge.

Friday, September 30, 1904.

Action at law to recover damages occasioned, as alleged, by the maintenance of a nuisance. Trial to jury, and verdict and judgment for plaintiff. Defendant appeals.— *Reversed.*

*Freeland & Evans* and *Miles & Steele,* for appellant.

*Livingston & Son,* for appellee.

Bishop, J.— The defendant owns and operates a cream-

ery situated at the town of Humiston in Wayne county. The same is located near a waterway emptying into Chariton creek, which in turn flows through plaintiff's home farm. It is alleged that the washings and refuse from the creamery were discharged into the waterway, by reason of which the water was polluted and rendered unfit for use by the stock kept by plaintiff on his farm; that such of his stock as did drink of the water were made sick, and some died; that noxious vapors and gases arose from the refuse and polluted water, making plaintiff's home unpleasant, and further, that by reason of such facts the rental value of his farm was greatly diminished and destroyed.

I. On the trial the defendant sought to prove that the business in which he was engaged was one of great benefit and profit to the general public in and about Humiston.

**1. NUISANCES: justification; evidence.** The court refused to permit such evidence to go to the jury, and thereof defendant complains. We think the ruling should be sustained. Without doubt, one who finds himself surrounded or in close proximity to factories, shops, etc., may be called upon to submit to some inconveniences arising therefrom, as from smoke, vapors, noises, and the like. This must be so, as otherwise but few industrial institutions could be established and operated, save in localities remote from human habitation and the places frequented by human beings. Many factories and shops, essential in a high degree to the convenience, well-being, and prosperity of the country, would be forced to close their doors, and abandon further attempt at operation. It is not the policy of the law to announce or give countenance to a rule the proximate result of which would be to thus block, if not to stop altogether, the wheels of progress. It is nevertheless true that one may not create a nuisance, and justify himself in a continuation thereof, on the ground that his establishment is the source of benefit and profit to the community; and, as applied to a water-course, the true rule is that a nuisance is created when the use of the stream

by the first user is unreasonable in character, and such as to produce a condition actually destructive of physical comfort or health, or a tangible, visible injury to property. Gould on Waters, section 206; Wood on Nuisances, section 640; *Ferguson v. Firmenich Mfg. Co.*, 77 Iowa, 576; *Weston Paper Co. v. Pope*, 155 Ind. Sup. 394 (57 N. E. Rep. 719, 56 L. R. A. 899). Whether the use to which it is sought to devote a water-course is reasonable or otherwise must be determined by the facts of the particular case. *Miller v. Webster City*, 94 Iowa, 162, cited and relied on by counsel for appellant, does not support their contention, nor does any other authority that has come to our notice. The *Miller Case* was brought in equity to enjoin the maintenance of a market place in Webster City, on the ground that by reason of the accumulation of foul and offensive matter on the market grounds a nuisance was created. The right to an injunction was denied, the court resting its holding upon the ground that the establishment of a market place was a public utility, and came within the powers expressly delegated to municipal corporations, and this coupled with the fact that the particular offensive matter complained of was a direct and necessary incident of the lawful use of the grounds as a market·place.

II. Complaint is made for that plaintiff was allowed to make proof of damages sustained subsequent to the filing of his original petition. It is a sufficient answer to this con-

2. NUISANCE: damages.

tention to say that, after the original petition was filed, the same was amended, alleging a continuation of the nuisance resulting in further damage, and before the trial was actually commenced, an amended and substituted petition was filed, setting forth the injury and damage sustained, including that occurring down to the time of such filing. This was proper, under our holding in *Foote v. Burlington Gaslight Co.*, 103 Iowa, 576.

III. Evidence was introduced by defendant tending to prove that the pollution of the stream by the drainage from

the creamery, if any such there was, was inconsiderable;
**3. Nuisances: liability of separate tort feasors.** that one McHenry, who occupied a farm lying between the creamery and the farm of plaintiff, made a practice of dumping dead animals in great numbers on the margin of a slough which drained into the waterway in question; and it was contended that the pollution of such waterway was caused in greater part, if not entirely, by the drainage from such slough. Respecting this matter of defense, the court gave the fifth instruction, as follows: "If the jury find from the evidence that the said water was polluted by the wrongful acts of one McHenry, and not by the defendant, that would be a complete defense, and you should find for the defendant; but if you find said waters were polluted, and that such pollution was caused in part by said McHenry and in part by defendant, such fact would be no defense in this action, and the plaintiff could recover from defendant the entire damages shown." We are agreed that, as applied to the facts in this case, the instruction was erroneous, and should not have been given. It is undoubtedly true that where an injury results from the concerted action of two or more persons, each may be held liable for the entire damages occasioned; but to sustain a recovery, concert of action must be made to appear. By this we are not to be understood as saying that it must be shown in all cases that the *tort feasors* acted in confederation with each other, or pursuant to an agreement between themselves to do the wrong. In many cases it is sufficient to show simply that they acted together knowingly in bringing about the result complained of. Where, however, one of the alleged *tort feasors* acts separately and for himself alone, and not in concert with the others, especially if he act without knowledge that the other is doing anything to bring about the injury complained of, he cannot be made liable for any damages not the direct and proximate result of his own acts. "And the fact that it is difficult to measure accurately the damage which was caused by the wrongful act of each con-

tributor to the aggregate result does not affect the rule, nor make any one liable for the acts of others." *Harley v. Brick Co.,* 83 Iowa, 73, and cases cited in the opinion. See, also, *Valparaiso v. Moffitt* (Ind. App.), 54 Am. St. Rep. 522 (39 N. E. Rep. 909). In the instant case the jury may very well have found there was no concert of action between McHenry and the defendant; that each acted independent of the other, and, for that matter, without knowledge of any acts on the part of the other. As the jury may have further found, the question being fairly submitted, that whatever injury and damage was sustained by plaintiff was the result, in part, of the acts committed by McHenry, the error of the instruction becomes fully apparent.

Other errors presented need not be noticed. They are either without merit, or are such as will not likely arise upon a retrial. For the error in the fifth instruction pointed out, the judgment must be, and it is, reversed, and the case is remanded for a new trial.— REVERSED.