PRODUCERS LIVESTOCK MARKETING ASSOCIATION, Appellant, v. R. B. LIVINGSTON et al., Appellees.

No. 42197.

OCTOBER 24, 1933.

Johnson & Teter, for appellant.

Leon N. Miller, for appellees R. B. and C. M. Livingston.

Thomas J. Bray, for appellee Ralph Warner.

Cross & Hamill, for appellee Monroe State Bank.

McNett, Kuhns & Brown, and H. E. De Reus, for appellee John Morrell & Company.

KINDIG, J.—This is an action brought by the Producers Livestock Marketing Association, a Kansas corporation, with its headquarters at St. Joseph, Missouri, the plaintiff-appellant, to recover damages from the defendants-appellees R. B. Livingston and C. M. Livingston, a copartnership doing business as Livingston Bros., Ralph Warner, Monroe State Bank, of Monroe, Iowa, a corporation, and John Morrell & Company, a corporation, for the conversion of 83 head of steers.

■ The point to be determined upon this appeal relates to the correctness of the district court's ruling on the motion of the appellee John Morrell & Company to strike: First, all causes of action against its codefendants; and, second, all of its codefendants as parties to this action.

. That motion was founded upon the theory that several causes of action based upon the separate and distinct conversion by each appellee, as distinguished from a joint cause based upon a single conversion committed by all the appellees, were alleged in the appellant's petition. In order for the reader to fully understand the propositions involved, it is essential now to state the facts, as disclosed by the appellant's petition filed in this cause.

On December 31, 1930, R. B. and C. M. Livingston, residents of Marion county, Iowa, executed to the National Live Stock Credit. Corporation of the National Stock Yards, Ill., a note for $13,226, secured by a chattel mortgage. Thereafter, in January, 1931, the mortgage was filed in the office, and indexed on the records, of the county recorder of Marion county. Apparently for the purpose of correcting an error, on January 19, 1931, the same mortgagors executed to the same mortgagee another chattel mortgage. Likewise, on January 23, 1931, the second mortgage was filed in the office, and indexed on the records, of the county recorder of Marion county. Following the execution of the mortgages, and before the alleged conversion herein discussed, the mortgagors, prior to October 17, 1931, sold 100 head of steers and delivered the proceeds thereof to the mortgagee. Accordingly, the mortgagee credited the note, secured by the mortgage, with the proceeds thus received. After thus crediting the mortgagors with the proceeds from the sale of the 100 head of steers, there still remained due on the note and mortgage $4,960.

It appears that the appellant, on November 25, 1931, by assignment became the owner and holder of the chattel mortgage and the partially paid note secured thereby. But before the assignment, and while the appellant's assignor thus owned the mortgage and partly paid note, the appellees Livingston Brothers on October 27, 1931, sold to Ralph Warner, an appellee, the remaining 83 head of steers. Ralph Warner thereupon received and took possession of the steers. As a part of that transaction, Ralph Warner issued his check for $4,960 on the appellee Monroe State Bank, payable to the said Livingstons. Thereupon the Livingstons indorsed the check

and delivered it to the appellant. Subsequent to the purchase of the cattle by Ralph Warner, he, in turn, on October 27, 1931, sold the cattle to John Morrell & Company, an appellee. When shipping the cattle to John Morrell & Company, Ralph Warner drew a sight draft on it payable through the Monroe State Bank. Consequently John Morrell & Company paid the sight draft to the Monroe State Bank, and obtained the cattle. But, when Ralph Warner's check was presented by the appellant as indorsee to the drawee bank, it refused to honor the same on the theory that there were no funds therefor. Whether the proceeds of the sight draft paid by Morrell & Company were retained by the Monroe State Bank to satisfy obligations which Ralph Warner may have owed it, does not appear in the record.

In any event, the appellant, on January 23, 1933, commenced the present action to recover from all the appellees, as before suggested, $4,960, with interest at the rate of 6 per cent. per annum from October 27, 1931. As a basis for its cause of action, the appellant in its petition sets forth the facts hereinabove related. This action was commenced in Marion county, where the Livingstons reside. None of the other appellees are residents of that county. John Morrell & Company is a resident of Wapello county, and the Monroe State Bank maintains its residence in Jasper county. Nothing appears in the petition concerning the residence of Ralph Warner, but it is said that in an earlier petition filed in that cause his residence appears as Jasper county. When deciding the controversy, the district court appears to have assumed that Ralph Warner resided in Jasper county. No controversy is raised on this appeal concerning the assumption that Ralph Warner resides in Jasper county. Both parties argue the merits of the controversy as if Ralph Warner were a resident of Jasper county.

According to the petition, the appellant predicates its action for the conversion of the steers against the appellees on the theory that Ralph Warner had constructive notice and knowledge of the mortgage, and that John Morrell & Company and the Monroe State Bank had actual, as well as constructive, notice and knowledge of the mortgage.

On February 13, 1931, John Morrell & Company filed its motion to strike based upon the theory of misjoinder, as before explained. The motion contained two parts, as previously set forth. These parts were, to repeat: First, the movant asked that every

purported cause of action alleged in the petition against the codefendants of John Morrell & Company be stricken; and second, the movant asked that each of its codefendants be stricken as a party to the action. After consideration, the district court sustained the motion on the theory of misjoinder. Upon this appeal the appellant presents no question except the correctness of that ruling. Therefore the correctness or the incorrectness of that ruling is the only question for our consideration at this time.

Was there a misjoinder of causes of action and of parties? It is apparently assumed by the parties on this appeal that the misjoinder of parties is to be determined upon the same theory as a misjoinder of causes of action. When considering the arguments therefor, we adopt the theory of the parties without deciding the correctness thereof. Ordinarily, a defendant is entitled to be sued in the county of his residence. Kosman v. Thompson, 204 Iowa 1254, 215 N. W. 261. So, generally speaking, John Morrell & Company, in a personal action, should be sued in Wapello county. Kosman v. Thompson (204 Iowa 1254, 215 N. W. 261), supra; Hoyt v. Eckles, 196 Iowa 385, 193 N. W. 578; section 11049, 1931 Code. Section 11049 provides:

"Personal actions, except as otherwise provided, must be brought in a county in which some of the defendants actually reside. * * * *"

Livingston Brothers, as before seen, are residents of Marion county. Accordingly the appellant, under the provisions of section 11049, attempted to bring the other appellees, residents of other counties, into Marion county. The appellant could do that providing its cause of action against those appellees could be joined in the one proceeding. Section 10960, 1931 Code. There it is provided:

"Causes of action of whatever kind, where each may be prosecuted by the same kind of proceedings, if held by the same party, and against the same party, in the same rights, and if action on all may be brought and tried in that county, may be joined in the same petition."

If the matters set out in the appellant's petition are those contemplated in section 10960 of the 1931 Code, then they may be joined in a single action.

A conversion of the steers in question was caused, the appel-

lant argues, by the joint as well as by the several actions of the appellees. Because of this, it is concluded by the appellant that the parties were properly joined. This result is justified, the appellant continues, because the appellees had actual or constructive notice and knowledge of the unpaid mortgage.

On the other hand, it is contended by the appellees that each transaction set forth in the petition constituted a separate and distinct conversion, if a conversion resulted in any event. Therefore they maintain that each appellee should be sued in his own county in a separate and distinct action. In order to determine the proposition, it is essential to now consider the theory of joinder before announced in this court.

Generally speaking, there are two theories upon which this court has permitted the joinder of actions on tort in a single suit. These theories now will be separately considered.

I. The first is where the tort-feasors act in concert or by unity of design to injure the party who brings the action. 1 Corpus Juris 1103; Farmer v. Brokaw, 102 Iowa 246, 71 N. W. 246; Tackaberry Co. v. Sioux City Service Co., 154 Iowa 358, loc. cit. 364, 132 N. W. 945, 134 N. W. 1064, 40 L. R. A. (N. S.) 102, Ann. Cas. 1914A, 1276; Barnes & Son v. Ennenga, 53 Iowa 497, 5 N. W. 597; Bowman v. Humphrey, 124 Iowa 744, 100 N. W. 854; Dickson v. Yates, 194 Iowa 910, 188 N. W. 948, 27 A. L. R. 533.

There is no allegation in the petition now under consideration setting forth a cause of action on the theory of conspiracy, unity of design, or concert of action. So far as appears in the petition, each sale was consummated without concert of action, unity of design, or conspiracy. When the Livingstons sold the steers to Ralph Warner, there is nothing to indicate that Ralph Warner and the Livingstons contemplated a sale to John Morrell & Company through a sight draft to be drawn upon the Monroe State Bank. But, according to the petition, the sale from the Livingstons to Ralph Warner was fully consummated as a separate and distinct transaction. Thereafter, according to the petition, Ralph Warner sold the steers to John Morrell & Company through a sight draft drawn upon the Monroe State Bank. At the time that was done, the petition does not indicate a conspiracy, concert of action, or unity of design between Warner, John Morrell & Company, the Monroe State Bank, and the Livingstons to convert the appellant's steers.

On the other hand, it fairly appears from the petition that the transaction between the Livingstons and Warner was separate, distinct, and complete, and that the transaction between Warner and John Morrell & Company is a later action likewise separate, distinct, and complete. Whether the part played by the Monroe State Bank is one and the same as the transaction between Warner and John Morrell & Company, we need not now decide. In any event, it is plain that the sales of the steers from time to time were not brought about because of the concert of action, conspiracy, or unity of design on the part of the various purchasers. So far, then, as conspiracy, unity of design, and concert of action are concerned, the petition does not state a joint cause of action involving John Morrell & Company. whose motion is now under consideration.

II. Nevertheless, it is argued by the appellant: First, that there was but one conversion of the steers under the circumstances, and that Ralph Warner, John Morrell & Company, and the Monroe State Bank contributed to that conversion; and, second, that because Ralph Warner, John Morrell and Company, and the Monroe State Bank had notice and knowledge of the appellant's mortgage, their successive purchases of the steers in itself amounted to a conversion, and therefore justifies the joinder of these purchasers in a single cause of action.

Manifestly, there was more than a single conversion, if any at all, in these various transactions. When Ralph Warner purchased the steers from the Livingstons, there was a complete conversion under the appellant's theory, as set forth in its petition. Had the appellant so elected, it, according to the facts stated in the petition, could have sued Ralph Warner for a completed conversion after he purchased the steers from the Livingston Brothers. A conversion, then, according to the petition, arose through the transaction between Ralph Warner and the Livingstons. Accordingly it appears from the petition that another conversion arose when Ralph Warner resold the steers to John Morrell & Company. There is no doubt, according to the language of the petition, that the appellant could have sued for that conversion. This later transaction, according to the petition, was complete and separate. Whether the acts of the Monroe State Bank constituted another conversion, we need not now, and therefore do not, decide. Hence it is apparent that there were at least two separate and distinct conversions. The appellant could have sued on either of them. So, without the allegations of

conspiracy, concert of action, and unity of design, it is apparent that the appellant cannot recover on the theory of a single conversion.

At this point the appellant relies on Faivre v. Mandercheid et al., 117 Iowa 724, loc. cit. 733, 90 N. W. 76, and cases of that type. In that case a wife sought to recover from two saloon keepers who sold intoxicating liquors to her husband and thereby injured him and caused her damages. That action was based upon a statute. According to the Faivre case (117 Iowa 724), supra, reading on page 733 of the Iowa Report, 90 N. W. 76, 79, it is said:

"The damages claimed by plaintiff are the result of a particular intoxication, to which it is charged both defendants contributed."

There is nothing in that opinion indicating to what extent such contribution is necessary by each defendant in order to join them in a joint action.

It has just been demonstrated, in any event, that under the allegations of the appellant's petition the perpetrators of one conversion in the case at bar did not contribute to the other. Each conversion was separate and distinct, and was consummated by parties who had nothing to do with the succeeding conversion.

III. Returning now to our second of the two theories above named on which the court has permitted the joinder of tort actions in a single suit, it will be found that such second theory does not afford the appellant relief in the case at bar under the Faivre case or otherwise. When stating the second theory, we said in McDonald v. Robinson, 207 Iowa 1293, reading on page 1295, 224 N. W. 820, 821, 62 A. L. R. 1419:

"A common intent, purpose, and design on the part of the wrongdoers to do a particular wrong or injury,—as, for example, where a conspiracy is charged,—is not always essential. There is a large class of cases in which joint liability may exist, from which the element of intent and unity of design and purpose is wholly absent. If the acts of two or more persons concur in contributing to and causing an accident, and but for such concurrence the accident would not have happened, the injured person may sue the actors jointly or severally, and recover against one or all, according to the proven or admitted facts of the case."

So, under the above-mentioned second theory, if, in the case at

bar, the appellees contributed to and caused the conversion, the appellant could join them in a single action providing the conversion would not have occurred but for the appellees' concurrent acts in the premises. Under our so-called second theory, therefore, it is not. enough that there be contribution to the conversion by the different appellees. Such contribution must so concur that without it the result would not have been brought about. McDonald v. Robinson (207 Iowa 1293, 224 N. W. 820, 62 A. L. R. 1419), supra; Heisler v. Heisler, 151 Iowa 503, 131 N. W. 676. Obviously the appellant has not stated a cause of action under this so-called second theory relating to concurrent acts. John Morrell & Company in no way contributed to the conversion which resulted, under the petition, when Livingston Brothers sold the steers to Ralph Warner. If John Morrell & Company converted the cattle, it did so at a later time by a separate act. As before seen, these alleged conversions were separate and distinct. By this discussion, we do not intend to overrule, or in any way cast doubt upon, Faivre v. Mandercheid et al. (117 Iowa 724, 90 N. W. 76) supra. That case is not in point because there is not a single conversion set forth in the petition, and, in any event, the rule announced in the Faivre case is not inconsistent with the doctrine here announced. The decision in the Faivre case arose under a statute, and there is nothing in that opinion to indicate the extent each saloon keeper contributed to the injury to the plaintiff's husband, and consequently to her. It is enough to say that the Faivre case (117 Iowa 724, 90 N. W. 76), supra, does not apply to the facts and circumstances here involved.

IV. Furthermore, as already indicated, it is contended by the appellant that it has stated a joint action in its petition because Ralph Warner, John Morrell & Company, and the Monroe State Bank had notice of the appellant's unsatisfied mortgage in each successive transaction. Relying, therefore, on Baker et al. v Lauderdale & Worthy, 14 Ala. App. 224, 69 So. 299, Pippin v. Farmers' Warehouse Co., 167 Ala. 162, 51 So. 882, and Lefkovitz v. Lester, 11 Ala. App. 504, 66 So. 894, in the case at bar the appellant concludes that it has stated a joint action in its petition against the appellees. These Alabama cases do not set forth the Alabama statutes, nor do they discuss generally the Alabama rule in reference to joinder of causes of action. Each state, of course, because of legislation or judicial opinions, has its own rule in reference to the joinder of causes of action. This fact must be kept in mind when

considering the Alabama cases. It was said in Lefkovitz v. Lester (11 Ala. App. 504, 66 So. 894, 895), supra, reading on page 895:

"If the cotton was converted by a sale of it in which each of the defendants participated, one as the seller and the other as the purchaser of it, both having notice of the plaintiff's rights, a joint action was maintainable against them for the wrongful act."

No doubt, in the case at bar, if the sale of the cattle to Ralph Warner by the Livingstons constituted a conversion, the sellers and the buyer might have been sued in a single action on the theory of a joint tort, for without the act of the sellers there could not have been a sale. Neither could there have been a sale without the act of the purchaser. So, in the event contemplated, the act of the purchaser concurred with the act of the sellers to produce the purported conversion. Without the act of the sellers there would have been no conversion. Also there would have been no conversion without the act of the buyer. Perhaps, too, if the sale of the steers by Ralph Warner to John Morrell & Company constituted a conversion, as indicated in the petition, that buyer and that seller, for the reasons just announced, might be sued by the appellant in a single action on the theory of a joint tort. That is consistent with the Alabama cases on which the appellant relies.

But it is said that the Alabama cases go farther, and hold that the mortgagee may sue, with the first purchaser and seller, the successive purchasers of mortgaged property who take with notice of the mortgage. Under the rule of this state, as before announced, these successive mortgagees could not be joined with the seller and first purchaser in the case at bar unless upon the theory of conspiracy, unity of design, and concert of action. In other words, these successive purchasers cannot be joined here on the theory of concurrent actions under our second rule above announced, for the reason that the first sale was not necessarily the cause of the second sale. The first sale may have occurred without the second. Manifestly the second sale would be a mere incident to the first. Unless, as said in McDonald v. Robinson (207 Iowa 1293), supra, reading on page 1295, 224 N. W. 820, 62 A. L. R. 1419, the one sale contributed to the other and the one would not have happened except for the other, the participants in the sales cannot be joined in one action. It is apparent, then, that under the rule in this state the appellant has not stated in its petition a joint cause of action, under

the statute above quoted, against the appellees. This is true for the reasons previously announced. Perhaps the appellant may have stated a joint cause of action against the Livingstons and Ralph Warner, on the one hand, and, on the other, it may have stated another joint cause of action against Ralph Warner and John Morrell & Company, but it did not state a joint cause of action against all of the appellees. Consequently the district court properly sustained the motion of John Morrell & Company.

Wherefore the judgment of the district court must be, and hereby is, affirmed.—Affirmed.

ALBERT, C. J., and EVANS, CLAUSSEN, and DONEGAN, JJ., concur.