James L. McInerney, Appellant, v. Fred A. Nachman, Appellee.

Gen. No. 38,804.

filed June 30, 1936.   Rehearing denied July 10, 1936.

DEFREES, BUCKINGHAM, JONES & HOFFMAN, of Chicago, for appellant; DON KENNETH JONES and CHAS. O. BUTLER, both of Chicago, of counsel.

ALTHEIMER, MAYER, WOODS & SMITH, of Chicago, for appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an appeal from a judgment for defendant in an action of trover, tried by the court without a jury. The amended declaration was in two counts.   The first

count alleged the losing by plaintiff and a finding by defendant of a bank check in the amount of $25,000, signed by plaintiff, to the order of defendant; a plea of the general issue was filed to this court and upon the trial, upon defendant's motion at the close of plaintiff's case, the court found for defendant. The second count also was in trover for the conversion by defendant of certain shares of stock; defendant filed a plea of the statute of limitations, to which plaintiff demurred, and the court overruled the demurrer and sustained the plea.

The principal argument made by respective counsel in this court raises the question as to whether, upon the facts developed upon the trial, plaintiff could maintain the action of trover. The trial court was of the opinion that it could not be maintained, and after consideration we are of the opinion that the holding of the trial court was correct.

This litigation grew out of the purchase of stock of the Nachman-Spring Filled Corporation. In October, 1929, plaintiff was operating the Grand Rapids, Michigan, plant of this corporation; the defendant was either president or chairman of the board of directors; plaintiff attended a meeting of the executives of the concern at its New York factory in October at about the time the market crash occurred; conferences were held concerning the business and general affairs of the corporation; the executives agreed that inasmuch as the Nachman stock was dropping it was a good time to buy.

Plaintiff testified that defendant invited him to "participate in a buying pool" for the purpose of buying Nachman stock and asked plaintiff to take $25,000 worth, to which plaintiff agreed. Plaintiff testified that defendant explained that he would buy this stock for all the participants in the pool and as soon as it was bought it would be delivered; that no stock could be bought on margin and all the stock had to be paid for in full; that payment of the stock was to be made when

the stock was purchased, and plaintiff would be notified when the money was due; that the stock would be distributed to each participant after it was bought.

October 31st defendant telegraphed to plaintiff—"Purchased twenty eight hundred fifty shares Nachman average forty seven Stop Please send check for twenty five thousand dollars at once." November 2nd plaintiff drew his check to the order of defendant for $25,000; this was received by defendant and indorsed by him to Hallgarten & Co., the stock brokers in the purchase of the stock; it was subsequently paid through the Chicago Clearing House.

November 19th defendant addressed a letter to plaintiff and the other participants in the pool referring to "the Nachman stock which we have purchased for our Pool Account. This is being carried at the brokerage house of Hallgarten and Company, Chicago, and is known as Account #222." The letter also referred to a total of 3,480 shares bought by the syndicate. To this plaintiff replied, noting that the stock was carried with Hallgarten and Company under account #222. The letter also made inquiry as to whether Hallgarten would carry additional shares for plaintiff if he should wish to buy more shares. To this defendant replied that the corporation owed some money to account #222 at Hallgarten and Company which defendant did not wish to take out of the business at this time and that this payment would be made within a few weeks and the stock then distributed. Then followed a considerable correspondence between the parties in which plaintiff claimed that he had contributed his money for the purpose of buying outright as many shares of stock as the amount would pay for and that he was not willing to let his shares be used as collateral for the corporation.

January 13, 1930, plaintiff wrote defendant again protesting against the manner in which the stock was purchased and stating that he would not now accept the stock under any circumstances and requested the re-

turn of his $25,000 with interest. January 18th defendant replied that plaintiff's position was "untenable"; that the pool was about to be dissolved and the stock distributed in the proper proportions among the members of the pool; that the balance due from plaintiff on the total purchase price was a net amount of $2,136.93, and that upon receipt of this amount 575 shares of the corporation's stock would be forwarded to plaintiff. Further correspondence followed, plaintiff declining to forward the amount due, and no stock was delivered to him. This lawsuit followed.

Trover is an old fashioned common law action and one who employs it must satisfy its requirements. In *Kerwin v. Balhatchett,* 147 Ill. App. 561, plaintiff sought to recover money voluntarily given to the defendant with which to pay a debt to defendant and also to discharge other debts of plaintiff; a dispute arose as to the amount plaintiff owed defendant, plaintiff claiming it was much less than the defendant claimed. The court held that the action of trover would not lie as the evidence showed the defendant took the money with the knowledge and consent of the plaintiff to be used for a certain purpose, and noted that trover is an ancient remedy, "involved in technicality of procedure and environed with legal fiction; but he who invokes it must maintain the cause in accord with precedent established for its adjudication." The opinion also notes that in vol. 2 Cooley on Torts (3rd ed.) p. 857, it is said that trover will not lie "for money which was given to the defendant to be used for a particular purpose and which the defendant converts to his own use, or which is found due upon an accounting." Mere neglect of some legal duty will not suffice to support trover although it may constitute sufficient ground to support an action on the case.

The facts in the cases cited by plaintiff can be readily distinguished from those in the case at bar. In *Knight v. Seney,* 290 Ill. 11, defendant was given certain secu-

rities to be taken to Ohio, to be used in a certain transaction there; defendant did not do this but disposed of the securities otherwise. This was held to be a wrongful conversion. A number of English cases have been cited by plaintiff sustaining an action of trover, but in all of these the defendant treated the property intrusted to his care as his own, contrary to the authority given him. It is to be noted that in the instant case, defendant was not intrusted with the custody of a bill of exchange to be held by defendant until he should receive instructions from the plaintiff as to its use. The evidence shows that the defendant had agreed with others to buy shares of stock for the benefit of all participants in the pool, and defendant did purchase the shares of stock of the corporation which he had been instructed to purchase.

Defendant's telegram to plaintiff notified him that 2,850 shares of the stock had already been purchased; 2,850 shares of the stock at $47 a share would amount to $133,950. It is self-evident that plaintiff could not have understood that he was buying all these shares of stock for $25,000. The check was obviously sent as part of the purchase price of this block of stock.

Plaintiff's counsel say that defendant, when he received the check, should not have intrusted it to the credit of a pool account with the broker without plaintiff's approval, and that when defendant did this it was a wrongful conversion of the check. This is contrary to the clear intent and interpretation of the telegram. The check forwarded was intended to transfer to the credit of defendant $25,000, to be applied on account of the purchase of shares of stock. Defendant did nothing with the check that he was not authorized to do. There were no instructions to defendant as to how he should purchase the stock, and plaintiff was not concerned as to the manner in which his check was used. He was only concerned that it should be used in the purchase

of stock of the corporation with which he was connected, and this was done. In this action of trover plaintiff must show that defendant has converted the check for $25,000; the evidence that it was used by defendant in the purchase of stock as agreed upon negatives any conversion—an essential fact necessary to support an action of trover.

But, says counsel for plaintiff, the evidence tends to show that this stock was bought upon a margin with a broker's office and that this was contrary to instructions of the plaintiff. The general rule is that where an agent disposes of the property of his principal in accordance with his authority but in a different manner than as instructed, and the default lies merely in the performance of that which he was to do, he is not liable for conversion of the property but only in an action for damages on account of the misconduct. Mechem on Agency (2nd ed.) p. 917. In *Sarjeant v. Blunt,* 16 Johnson (N. Y.) 74, defendant was intrusted with a chronometer, to be sold at a certain price; defendant sold at a less price; plaintiff brought an action of trover. It was held that the selling was not a conversion although it was a breach of duty, and that an action of trover would not lie. In *McMorris v. Simpson,* 21 Wendell (N. Y.) 610, the defendant was intrusted with certain merchandise to sell in New York; he carried the goods to Delaware and there negotiated a sale; plaintiff brought an action in trover. The court held trover would not lie, the court saying, ''There must . . . be an entire departure from his authority before this action . . . can be maintained.'' Among other cases involving similar facts where it was held that trover would not lie are *Bourquin v. Atlanta State Bank,* 107 Neb. 811; *Loveless v. Fowler,* 79 Ga. 134; *Sturges v. Keith,* 57 Ill. 451; *Race v. Chandler,* 15 Ill. App. 532; *Woods Machine Co. v. Woodcock,* 43 Wash. 317; *Minneapolis Trust Co. v. Mather,* 181 N. Y. 205. At most, the evi-

dence may have shown that defendant departed somewhat from his instructions not to buy on a margin, although the evidence as to this is indefinite, but this was a failure in the manner of performance and not in the performance of what he was to do, namely, buy the stock.

Plaintiff charges that defendant wrongfully converted the check for $25,000. *Doering v. Shadburne,* 259 Ill. App. 577, was an action of case, not of trover; plaintiff had delivered to defendant a check payable to the defendant, with instructions to purchase securities for plaintiff; defendant cashed the check but failed to purchase the securities. The court held that defendant did not embezzle the check as his possession of it was lawful and he had a right to cash it; the check was merely the means by which the money was procured; if plaintiff had charged that defendant had embezzled the check he would have failed to make out a prima facie case for the reason that such an allegation would not have been sustained by the evidence. (Certiorari was denied by the Supreme Court.) This language is applicable in the present case. The check was made payable to defendant and mailed to him. It was merely the means by which plaintiff reimbursed defendant for the price of the securities purchased.

Following the uniform decisions where this question has been presented, we are of the opinion that the court properly found that plaintiff could not maintain his action.

Although counsel for defendant does not make the argument, yet the evidence tends to support the conclusion that plaintiff could not recover in any action. His evidence is that he contributed his money as a participant in a "pool." The term "pool" means a surrender of certain individual rights and powers to the common holder for the benefit of all, on the theory that the accruing benefits gained by the joint venture outweigh

the individual rights surrendered. *Burley Tobacco Society v. Monroe,* 148 Ky. 289. It may be plausibly argued that when plaintiff knowingly entered into the pool he surrendered to the defendant, the common buyer for all, the right to control the details of the manner in which defendant should purchase the stock. As this phase has not been argued we only suggest the point.

Plaintiff argues that the court erred in overruling his demurrer to defendant's plea of the statute of limitations to the second count of the complaint. The second count was in trover for the conversion of the stock; the count was filed April 18, 1935; the conversion of the stock was alleged to have taken place November 2, 1929, more than five years—the statutory limit—prior to the filing of that count. Plaintiff argues that under section 39 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 167, this second count is substantially the same as that set up in his original declaration. We do not see how it can be said that where the cause of an action in trover is for the conversion of a check, that this is substantially the same cause of action as one for the conversion of shares of stock. Among the many cases indicating that these are different causes of action are *Fish v. Farwell,* 160 Ill. 236; *Heffron v. Rochester German Ins. Co.,* 220 Ill. 514; *Borrow v. Chicago, B. & Q. R. Co.,* 206 Ill. App. 287; *Richter v. Michigan Mut. Life Ins. Co.,* 66 Ill. App. 606. We have examined the cases cited by plaintiff in support of the proposition that the action for conversion of the stock is substantially the same as an action for the conversion of the check, but none of the cited cases tend to support this. Moreover, plaintiff's second count alleged the conversion of 2,850 shares of stock, which cannot arise out of the transaction claimed in the first count, of a conversion of a check for $25,000 because, as shown by plaintiff's evidence, the value of 2,850 shares of stock, said to be converted

in the second count, is $133,950. In any event, for the same reasons that the evidence will not support the action of trover in the first count, so neither will it support the second count.

We find no convincing reason to disagree with the conclusion of the trial court, and the judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.