ONTARIO LIVESTOCK COMMISSION Co., appellant, v. WILLIAM D. FLYNN, d/b/a FLYNN COMMISSION Co., et al., appellees.

No. 51245.

(Reported in 126 N.W.2d 362)

FEBRUARY 11, 1964.

118

Pizey, Sears & DeWitt, of Sioux City, for appellant.

Stilwill, Wilson & Rhinehart, of Sioux City, for appellee William D. Flynn, d/b/a Flynn Commission Co.

Daniel C. Galvin and John T. O'Brien, both of Sioux City, for appellee Marvin Kastner.

GARFIELD, C. J.—This is a law action in two counts by Ontario Livestock Commission Company of Ontario, Oregon, against defendants Kastner and Flynn, who live in or near Sioux City, Iowa, for alleged conversion of two shipments, each of 65 cattle, from plaintiff to Kastner. Plaintiff claims the cattle were obtained by fraud upon worthless drafts and delivered by Kastner to Flynn, a livestock commission merchant, who sold them and paid Kastner the proceeds of the sale, less commission. At the close of the evidence a verdict was directed against plaintiff who has appealed from the adverse judgment thereon.

Grounds of the motion to direct which were sustained are 1) that plaintiff knew of and consented to the sale, and 2) the cattle were commingled with others not obtained from plaintiff before delivery to Flynn.

I. Plaintiff is a partnership engaged in the livestock business. Defendant Flynn is an individual also so engaged. Each is a registered market agency under the federal Packers and Stockyards Act. At all material times defendant Kastner was an order buyer and speculator in livestock. Jerry Baker, a prominent figure in the controversy, was a livestock dealer at Caldwell, Idaho.

Kastner learned of Baker in April 1961 and arranged with him by phone to purchase cattle for him and pay for them by drawing a draft on Kastner payable through a bank at Laurel, Nebraska. Kastner would receive and sell the cattle and "pick up" the draft at the bank. In mid-June (1961) Baker told Kast-

ner about 65 heifers plaintiff was about to sell. Kastner testifies he sold them to a man at Fort Collins, Colorado, and authorized Baker to buy the heifers for him (Kastner) and ship them to Fort Collins. Apparently all dealings between Kastner and Baker were by phone.

Baker caused the 65 heifers to be purchased for Kastner at plaintiff's auction sale at Ontario, Oregon, and gave plaintiff a draft on Kastner for $9720.87 for the purchase price. The heifers were shipped to Kastner, in care of a commission company, at Fort Collins on June 22. Kastner testifies he turned the cattle down because of excessive cost and shrinkage in weight and so advised Baker. Baker denies this and says the heifers complied with the instructions he received from Kastner.

Morgan Beck, a partner and business manager of plaintiff, testifies Baker told him Kastner turned the cattle down. "I instructed Baker to have the cattle sold through the Fort Collins auction in our name and remit directly to [us]." It is admitted plaintiff never sent the draft for $9720.87 through for collection. It has never been paid. The managing officer of the bank at Laurel, Nebraska, testifies Kastner on June 22 or later never had sufficient funds in his account to pay the draft and the bank had no arrangement to honor drafts drawn on him. Kastner admits this. When such drafts were paid Kastner deposited the funds the day payment was made.

Baker's testimony is that Kastner kept telling him he had sold the heifers and promising to send plaintiff the amount of the draft and that Baker so informed Morgan Beck. "That was all right with Mr. Beck." Later, according to Baker, Kastner admitted he was lying when he said he had the heifers sold. They were not sold at Fort Collins but shipped by Kastner to Laurel, Nebraska, commingled with other livestock he had there and shipped to Flynn at Sioux City. Flynn in turn sold the cattle he received and paid Kastner the proceeds, less commission for selling.

Count I of plaintiff's petition asks judgment for the $9720.87 from both Kastner and Flynn on the theory the heifers were wrongfully converted when Kastner obtained possession of them through his agent Baker, both defendants

contributed to the conversion and the draft represented the fair and reasonable market value of the animals.

Plaintiff's Count II claims it sold Baker for Kastner's account 65 mixed steers and heifers for $5513.44, their fair market value, on July 21, 1961; Baker paid for them with a draft on Kastner payable at the Laurel bank; the draft was presented and returned unpaid for insufficient funds; Kastner delivered the cattle to Flynn who sold them on commission and paid Kastner the net proceeds; both defendants wrongfully converted the cattle and are liable to plaintiff for their value.

The evidence is these July 21 cattle were shipped from Ontario to Laurel, Nebraska, there mixed with other cattle of Kastner and the commingled lot was delivered to Flynn. Between June 22 and July 21 plaintiff sold about 200 other cattle to Kastner and the drafts given in payment of them were paid by the Laurel bank. We understand Baker made all these purchases for Kastner and had general authority to buy cattle for him and draw drafts on Kastner in payment.

II. Plaintiff contends title to the cattle did not pass to Kastner by reason of nonpayment of the drafts given for their purchase, Kastner obtained possession by fraud which amounted to conversion, Flynn—as Kastner's agent—aided and assisted his codefendant in the conversion and is equally liable with him.

Plaintiff relies upon Birmingham v. Rice Bros., 238 Iowa 410, 26 N.W.2d 39, 2 A. L. R.2d 1108, and like decisions in other jurisdictions. There an impostor fraudulently obtained cattle from plaintiff by issuing to him a worthless check in payment, the impostor delivered the cattle to defendant commission firm which sold them to a third party and paid the impostor the net proceeds of the sale. Both plaintiff and defendant acted in good faith without knowledge of the fraud. We held, by reason of the fraud practiced on plaintiff, title to the cattle did not pass to the impostor, and defendant commission firm was liable to plaintiff, the true owner, for the value of the cattle even though it acted in good faith and in ignorance of its fraudulent principal's want of title.

Although there is authority contrary to the cited decision most decisions are in accord. See 35 C. J. S., Factors (1960),

section 57b, pages 578, 579; United States v. Union Livestock Sales Co., 4 Cir., W. Va., 298 F.2d 755, 760; Restatement Agency, Second, section 349 and appendix, pages 574 to 578. However, Birmingham v. Rice Bros. does not involve or consider either of the grounds on which this verdict was directed against plaintiff. We now consider whether the ruling, as to Count I, should be upheld on the ground plaintiff consented to sale of the cattle by Kastner.

III. The C. J. S. citation, supra, states (page 579), "The factor is not liable for conversion where he has been misled through the act of the owner * * * or where he obtains possession, and sells the goods, with the consent of the owner."

89 C. J. S., Trover and Conversion, section 5, says, "Nonconsent to the possession and disposition of the property by the defendant is indispensable to a conversion."

53 Am. Jur., Trover and Conversion, section 30, contains this: "* * * a conversion generally consists of a wrongful, tortious, or unlawful taking of property from the possession of another by fraud, * * * and without his consent or approbation, either express or implied."

Numerous precedents which support one or more of these statements include Doyle v. Burns, 123 Iowa 488, 514, 99 N.W. 195; French v. Smith Booth Usher Co., 56 Cal. App.2d 23, 131 P.2d 863, 865, 866; McInerney v. Nachman, 286 Ill. App. 477, 3 N.E.2d 105, 108; Edinburg v. Allen Squire Co., 299 Mass. 206, 12 N.E.2d 718, 721; Burchmore v. H. M. Byllesby & Co., 140 Neb. 603, 1 N.W.2d 327, 332; Biesmann v. Black Hills United Mining Co., 64 S. D. 82, 264 N.W. 518, 520; Staats v. Miller, Tex. Civ. App., 240 S.W.2d 342, 344, 345. See also Sergeant v. Watson Bros. Transp. Co., 244 Iowa 185, 199, 52 N.W.2d 86, 94.

We have repeatedly held express or implied consent by the holder of a chattel mortgage or landlord's lien to sale of the property subject thereto is a waiver of the lien and precludes an action for conversion. Producers Livestock Marketing Assn. v. John Morrell & Co., 220 Iowa 948, 952–954, 263 N.W. 242, and citations. "It is elementary that there is no conversion of property where it has been acquired and used with the consent of the owner or pledgee." Burroughs v. Butler-Ryan Co., 121

Iowa 215, 217, 96 N.W. 750; Producers Livestock Marketing Assn. case, supra.

IV. We will set out the evidence bearing on the question of plaintiff's express and implied consent to sale of the heifers Count I alleges were converted.

Morgan Beck, a partner and business manager of plaintiff, was the only witness connected with plaintiff other than as a customer. He testifies the 65 heifers were consigned to Kastner at Fort Collins, Colorado, in care of a commission company with a sales pavilion. "My understanding was * * * they were to be yarded and sold to someone else. * * * the buyer * * * was going to sell them at Fort Collins. We did not object, it was none of our business if the draft went through. We were selling to Mr. Kastner."

Mr. Beck also says, "Before the draft was deposited Mr. Baker told me Kastner had turned the cattle down; therefore there was no reason to deposit it. I instructed Baker to have the cattle sold through the Fort Collins Auction in our name and remit directly to our company."

Jerry Baker testifies, "I told Morgan Beck that Kastner was going to take them; that he had them sold. Then the cattle were shipped. * * * Later I * * * told Beck I had talked to Kastner and he said the heifers were sold and he'd send them the money. That was all right with Mr. Beck. * * * Both Ontario and I knew Kastner was buying the load on June 20 for resale to a rancher near Fort Collins."

It cannot be said, certainly not as a matter of law, from this testimony that plaintiff expressly gave its unconditional consent to Kastner's sale of the heifers after he turned them down. The only express consent plaintiff gave was that they be "sold through the Fort Collins Auction in our name and remit directly to our company." But the cattle were not sold at Fort Collins. The conditions on which the consent was given were not fulfilled. There was no express agreement that Kastner act as plaintiff's agent for sale of the heifers or that the proceeds be paid to him and he in turn would remit to plaintiff.

If plaintiff had made Kastner its agent for sale of the cattle his disposition of them in accordance with his authority, but in

a different manner than as instructed, to one who acted in good faith and in ignorance of his instructions, would not amount to conversion but a breach of duty. McInerney v. Nachman, supra, 286 Ill. App. 477, 3 N.E.2d 105, 108, and citations. We think the rule applicable here, so far as express consent is concerned, is that it must be followed by a sale pursuant thereto, i.e., within the terms of the consent. 10 Am. Jur., Chattel Mortgages, section 192; Annotation, 97 A. L. R. 646, 672.

■ If recovery on Count I is to be denied on the ground plaintiff consented to Kastner's disposition of the heifers it must be a consent implied from the course of dealing between the parties and under all the circumstances of the case. If plaintiff knew Kastner was buying the heifers for resale, that the only means he would have of paying for them would be proceeds of the sale and plaintiff accepted Kastner's personal obligation to pay, it must be held to have impliedly consented to the disposition made of the cattle here and to have waived its right to sue for conversion.

We think there is evidence to support a finding plaintiff impliedly consented to the disposition Kastner made of the heifers but it is not so clear as to compel such a finding and warrant the directed verdict for defendants on this ground. The issue was one of fact, not of law. See on this Williams v. Stroh Plbg. & Elec., Inc., 250 Iowa 599, 601–603, 94 N.W.2d 750, 752, 753, 82 A. L. R.2d 465.

V. As to Count II, there is no evidence plaintiff expressly consented to Kastner's disposition of the mixed cattle, even on condition. And the evidence of implied consent is less clear than that relating to Count I. The mixed cattle were shipped to Kastner at Laurel, Nebraska, where he lived, not in care of a sale pavilion at Fort Collins. Nevertheless we hold there was an issue of implied consent to be submitted to the jury on Count II, arising from the course of conduct between the parties and under all the circumstances of the case.

■ VI. The second ground of defendants' motion to direct on which they seek to uphold the ruling is that plaintiff had no right of property, general or special, in the cattle, no possession or right thereto and therefore may not sue for conversion. Al-

though the court did not sustain this ground, of course defendants are entitled to urge it here in support of the ruling. Markman v. Hoefer, 252 Iowa 118, 123, 106 N.W.2d 59, 62, and citations. We find this ground without merit and the court properly overruled it.

As to the 65 heifers referred to in Count I, Mr. Beck testifies plaintiff had them in its yards, it owned and had title to them when they were sold. Also that plaintiff owned the 65 mixed cattle when they were sold in July, part of them were in its yard at Weiser, Idaho, and part in its yard at Ontario. Baker purchased 24 of these mixed cattle from a commission firm at Caldwell, Idaho, but plaintiff paid for them and thus owned them and had the right to their possession when sale of the 65 was made to Kastner and the draft drawn upon him was given plaintiff therefor.

Defendants' argument on this point proceeds from the premise plaintiff's only interest in the cattle was as a factor to which they had been consigned for sale. As indicated, there is substantial evidence plaintiff owned all the cattle and had possession or the right thereto at the times it sold to Kastner. Even if defendants' premise were accepted, plaintiff, having a special right of property and possession or right thereto of the cattle, would be entitled to sue for conversion. 35 C. J. S., Factors, section 54; 89 C. J. S., Trover and Conversion, sections 72, 73; 22 Am. Jur., Factors, section 70; 53 Am. Jur., Trover and Conversion, sections 66, 67. See also Smith & Son v. Bloom, 159 Iowa 592, 597, 598, 141 N.W. 32; King v. Farmers Grain Co., 194 Iowa 979, 982, 188 N.W. 720.

Defendants raise for the first time in this court the failure of plaintiff's petition to allege it owned the cattle. Count I alleges plaintiff at the time in question had for sale in its pavilion at Ontario, Oregon, the 65 described heifers. Count II alleges at the time of sale to Kastner it had for sale in its pavilions at Ontario, Weiser and elsewhere the 65 described mixed steers and heifers. We might ignore this contention because it is made here for the first time. However, it is without merit. Citations last above. We may also observe that when a doubtful pleading (assuming plaintiff's petition is such) is not attacked

until after issue is joined, it will be liberally construed in favor of the pleader in order to effectuate justice. Reed v. Harvey, 253 Iowa 10, 13, 110 N.W.2d 442, 443, 444; Ruud v. Grimm, 252 Iowa 1266, 1270, 110 N.W.2d 321, 323; Anthes v. Anthes, 255 Iowa 497, 503, 122 N.W.2d 255, 258.

VII. As stated at the outset, the trial court ruled plaintiff could not recover from Flynn because the cattle it sold to Kastner were commingled with others. This ground of the motion to direct would not be available to Kastner. (No brief has been filed for him and the assumption is a judgment against him would be of doubtful value, at best.)

Kastner testifies directly more than once, as to each shipment of cattle in controversy, they were delivered by him to Flynn for sale for Kastner's account, Flynn sold them and Kastner received the proceeds. He gives like testimony as to all 130 cattle. On examination of Kastner by Flynn's counsel and from Flynn's testimony it appears Flynn was at Laurel when the 65 mixed cattle arrived about July 21, the two men removed some of them from the load—Kastner says about 18—and replaced them with other cattle Kastner had there, the commingled load was shipped to Sioux City and sold by Flynn. While there is some testimony of some commingling of the 65 heifers sold to Kastner in June and by him delivered to Flynn, there is substantial evidence the original 65 head came into Flynn's possession as part of a larger shipment and were sold by him.

The general rule is a claimant for conversion must establish the identity of the property claimed. Harlan Production Credit Assn. v. Schroeder Elev. Co., 253 Iowa 345, 348, 112 N.W.2d 320, 322, and citations. It cannot be contended the cattle plaintiff sold to Kastner were not identified. There is no evidence plaintiff consented to any commingling of either shipment of cattle or had any part therein. In our opinion the fact Kastner and Flynn replaced some of the cattle acquired from plaintiff with others affords no defense to plaintiff's action to recover the fair and reasonable market value of the cattle shipped to Kastner.

The commingling of the cattle by defendants was intentional and must be regarded as wrongful. If plaintiff were

seeking to recover the proceeds of the sale of the commingled lot, a question of confusion of goods would be presented. We think no extended discussion of this doctrine is called for. We may say, however, that where the confusion is tortious, the party by whose fault the mixture was caused must bear the whole loss unless he can identify his property from that with which it was commingled. Defendants made no attempt to identify the cattle delivered to and sold by Flynn which did not come from plaintiff, nor the price realized by Flynn therefor. See In re Assignment of Thompson, 164 Iowa 20, 29, 145 N.W. 76, Ann. Cas. 1916D 1210; Ayre v. Hixson, 53 Ore. 19, 98 P. 515, 133 Am. St. Rep. 819, Ann. Cas. 1913E 659, 664, and citations, and Note 665; Note Ann. Cas. 1918A 740; Annotations, 10 A. L. R. 765; 39 A. L. R.2d 555, 563 to 565; 11 Am. Jur., Confusion of Goods, sections 3 and 14.

We believe Sloan State Bank v. Stoddard & Son, 178 Iowa 104, 107, 108, 159 N.W. 636, L. R. A. 1917A 1261, supports our conclusion that the commingling here affords no defense to such an action as this.

VIII. The trial court ruled evidence of the fair and reasonable market value of the cattle at Ontario, Oregon, at the time they were shipped to Kastner was inadmissible as against Flynn. Plaintiff argues this ruling was error and Flynn seeks to uphold it. We feel we should express our opinion upon this point if it should arise again on a retrial. The court evidently reasoned that if Flynn is liable for conversion it is for a separate and distinct conversion from that committed by Kastner at the time the cattle were procured for him by his agent Baker by issuance of the worthless drafts. We cannot agree with this view.

The general rule is that the fair and reasonable market value at the time and place of the taking is the measure of damages for conversion. Gensburg v. Marshall Field & Co,. 104 Iowa 599, 601, 74 N.W. 3; Doyle v. Burns, 123 Iowa 488, 506, 99 N.W. 195; 89 C. J. S., Trover and Conversion, sections 165 to 168; Annotation, 79 A. L. R.2d 677, 728 to 731.

It is not contended evidence of the fair and reasonable market value of these cattle at Ontario at the times they were

shipped to Kastner was not properly received as against him. We think it was likewise admissible as against Flynn. We reach this conclusion by reason of the relationship between the two defendants and the part Flynn played in assisting Kastner, as his agent, in conversion of the cattle.

In First National Bank of Pipestone v. Siman, 65 S. D. 514, 517, 275 N.W. 347, 348, 349, a mortgagee of sheep sued a commission firm in Sioux City, to whom the mortgagor delivered them for sale, for conversion of the mortgaged animals. Of the relationship between the mortgagor and seller the court says: "That the defendants assisted Harms [mortgagor] in the conversion of these sheep is without question. The defendants not only assisted in the sale, but actually conducted the sale, and thereafter disbursed the proceeds derived from such sale. Clearly these defendants played an active and very important part in the conversion of these sheep." Birmingham v. Rice Bros., supra, 238 Iowa 410, 413, 414, 26 N.W.2d 39, 41, 2 A. L. R.2d 1108, approves the Siman decision and quotes this therefrom: "If the defendants were not purchasers of these sheep, and we agree with respondent that they were not, they were the agents of Harms in selling and disposing of the sheep to the packing company. By the great weight of authority an agent who assists his principal in converting property of a third person to the use of the principal or master is personally liable to the true owner *for the loss thereby inflicted* * * *. The only defense is that the defendants acted innocently and without knowledge or notice of plaintiff's mortgage. However, we are convinced that innocence or lack of notice or knowledge is no real defense" (emphasis added).

Our Birmingham opinion also contains this: "The factor, even though innocent, is liable if he assists in such conversion, because he stands in the shoes of his principal. The liability of both principal and factor is based not upon contract but upon tort" (pages 414, 415 of 238 Iowa, page 42 of 26 N.W.2d).

 The loss inflicted upon plaintiff was the fair and reasonable market value of the cattle at Ontario at the times plaintiff parted with them. The undisputed evidence is that such

value was the amounts for which plaintiff sold the cattle and took drafts in payment.

"The fundamental principle of damages is to restore the injured party, as nearly as possible, to the position he would have been in had it not been for the wrong of the other party." (Citations) United States v. Hatahley, 10 Cir., Utah, 257 F.2d 920, 923, 79 A. L. R.2d 668, 673.

Flynn's counsel rely upon what is said in Producers Livestock Marketing Assn. v. Livingston, 216 Iowa 1257, 1263, 250 N.W. 602. There mortgagors of cattle sold them to one Warner who, in a separate transaction, sold them to John Morrell & Co. The mortgagee in one action sued the mortgagors, Warner, Morrell and a bank for conversion. We held there was a misjoinder of causes of action and parties defendant and pointed out there were two separate transactions each of which was a conversion. Here Kastner did not sell the cattle to Flynn. As we have tried to explain, Flynn is liable, not as a purchaser in an independent transaction from Kastner, but as his agent who assisted him in conversion of the cattle. This was not the situation in the precedent on which Flynn relies.

We think defendants were not entitled to a directed verdict on the grounds urged and the cause is—Reversed and remanded.

All JUSTICES concur.